```
IN THE UNITED STATES DISTRICT COURT
  FOR THE NORTHERN DISTRICT OF TEXAS
            LUBBOCK DIVISION
```

| | |
|---|---|
| SIWELL, INC. d/b/a CAPITAL MORTGAGE SERVICES, | § § § |
| Plaintiff, | § § |
| VS. | § Civil Action No. 5:12-CV-185-D § § |
| LEVERAGE FINANCIAL, LLC, | § § § |
| Defendant. | § |

## MEMORANDUM OPINION AND ORDER

Following a jury trial and verdict in its favor, plaintiff Siwell, Inc. d/b/a Capital Mortgage Services ("Siwell") moves for attorney's fees and costs under Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (West 2017). Defendant Leverage Financial, LLC ("Leverage") moves under Fed. R. Civ. P. 50(b) for judgment as a matter of law, or, alternatively, for a new trial, contending that Siwell submitted insufficient evidence of damages. For the reasons that follow, the court denies both motions.

I

Siwell purchased a home mortgage loan ("Bozeman Loan") from Leverage, which it later sold to the Federal National Mortgage Association ("Fannie Mae"). Fannie Mae determined that the Bozeman Loan had been materially misrepresented because Bozeman did not live in the property as her primary residence. Fannie Mae first demanded that Siwell repurchase the loan, but later required that Siwell make Fannie Mae whole by compensating Fannie Mae for the difference between the purchase price and the ultimate sale price.

Siwell sued Leverage for breach of contract.[1]  At trial, the jury found that the purchase agreement between Siwell and Leverage required that Leverage repurchase the loan if the loan did not meet the requirements for Fannie Mae delivery.  Leverage did not repurchase the Bozeman Loan, and the jury found that Siwell suffered damages as a result.  Following the verdict, Leverage moved for judgment as a matter of law, which the court denied.  Leverage now renews its motion, contending that Siwell failed to submit sufficient evidence to prove that it incurred damages of $87,025.14.  Siwell moves for an award of attorney's fees.  Both motions are opposed.

II

A

In a breach of contract action under Texas law, "[a] person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs[.]"  Tex. Civ. Prac. & Rem. Code Ann. § 38.001.[2]  "Generally, the party seeking to recover attorney's fees carries the burden of proof."  *Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 547 (Tex. 2009).  Section 38.001(8) applies to a valid claim for "an oral or written contract."  Siwell has recovered from Leverage on a valid claim for a written

---

[1]Siwell initially brought a claim regarding an additional loan, but the claim was dismissed prior to trial.

[2]Leverage moves to strike, or, alternatively, for leave to file a surreply to, Siwell's reliance on § 38.001 in its reply, contending that Siwell failed to identify the statutory basis for recovering attorney's fees until it filed its reply.  Because the court concludes that Siwell is not entitled to recover attorney's fees under § 38.001, the court denies Leverage's motion as moot.

contract. The question presented is whether Leverage, a limited liability company ("LLC"), is "an individual or corporation" within the meaning of § 38.001.

B

As a threshold matter, Siwell contends that the court should not consider whether Texas law allows recovery of fees against an LLC because Leverage failed to raise this argument until its response to Siwell's motion for attorney's fees. In Siwell's amended reply, it contends that Leverage is raising an affirmative defense because it is asserting "an independent reason (unrelated to the merits) why the plaintiff should not recover." P. Am. Reply ¶ 15 (citing *MAN Engines & Components, Inc. v. Shows*, 434 S.W.3d 132, 137 (Tex. 2014)). And Siwell concludes that, because affirmative defenses are waived if not pleaded, *see* Rule 8(c), the court cannot consider Leverage's argument. The court disagrees.

Because Siwell bears the burden of proving that it is entitled to attorney's fees, it must establish each element of the statute under which it seeks fees. *See Smith*, 296 S.W.3d at 547. If Siwell does not prove that Leverage is an entity that, by statute, can be liable for such fees, Siwell is not entitled to such fees as a matter of law. This is not an affirmative defense. *See Seminole Pipeline Co. v. Broad Leaf Partners, Inc.*, 979 S.W.2d 730, 759 (Tex. App. 1998, no pet.) (holding as to statutory cap on damages: "If an intentional tort and/or malice is not pled and proven by the plaintiff, the cap automatically applies. Thus, we do not view the statutory cap as an affirmative defense."). Leverage therefore is not asserting an

affirmative defense that is waived if not pleaded or otherwise asserted.[3] Rather, Leverage is relying on Siwell's failure to establish an essential element of its attorney's fees claim: that Siwell is seeking to recover from an individual or corporation. "Because [Leverage] has nothing to prove, [it] had nothing to plead" or raise before Siwell's motion for attorney's fees, and its argument is properly before the court. *Id.*

C

Where, as here, the court is exercising diversity jurisdiction, it is *Erie*-bound[4] to apply the law as would a Texas court. *See, e.g., Allstate Ins. Co. v. Shelby*, 672 F. Supp. 956, 958 (N.D. Tex. 1987) (Fitzwater, J.). The Supreme Court of Texas has not yet addressed whether § 38.001 permits the recovery of attorney's fees from an LLC. When there is no binding decision of the Supreme Court of Texas on the question, this court must make an "*Erie*-guess," i.e., a prediction of how that court would resolve the issue if presented with the same case. *See, e.g., Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citing *Six Flags, Inc. v. Westchester Surplus Lines Ins. Co.*, 565 F.3d 948, 954 (5th Cir. 2009)). "While decisions of intermediate state appellate courts provide guidance, they are not

---

[3]Although this court has sometimes referred to similar arguments as "defenses," *see, e.g., Hoffman v. L &M Arts*, 2015 WL 1000838, at *1-2 (N.D. Tex. Mar. 6, 2015) (Fitzwater, J.), *aff'd in part, rev'd in part on other grounds*, 838 F.3d 568 (5th Cir. 2016), it simply meant that the defendant, as a means of defending itself, had pointed to the plaintiff's failure to establish an element of its claim. The court has not suggested that such an argument is subject to waiver. *See id.* (holding that pretrial order contained reference to defendant's arguments regarding attorney's fees, and thus not deciding whether arguments could be waived).

[4]*Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

controlling. If a state's highest court has not ruled on the issue in question, a federal court must determine, to the best of its ability, what the highest court of the state would decide." *United Teacher Assocs. Ins. Co. v. Union Labor Life Ins. Co.*, 414 F.3d 558, 565-66 (5th Cir. 2005) (citations omitted).

This court recently considered this question in *Hoffman v. L &M Arts*, 2015 WL 1000838 (N.D. Tex. Mar. 6, 2015) (Fitzwater, J.), *aff'd in part, rev'd in part on other grounds*, 838 F.3d 568 (5th Cir. 2016).[5] It concluded that,

> based on the plain meaning of the terms "individual" and "corporation," the history of § 38.001 and its predecessor, Article 2226, and the construction given to § 38.001 by Texas courts of appeals and federal courts (including judges of this court), the court makes an *Erie* prediction that the Supreme Court of Texas would hold that an LLC is neither an "individual" nor a "corporation" within the meaning of § 38.001, and that a party with a valid claim cannot recover attorney's fees from an LLC under § 38.001.

*Id.* at *10. On appeal, the Fifth Circuit declined to consider this court's interpretation of § 38.001 because the panel had held that there was no compensable breach of contract. But the panel "note[d] that an intervening decision by the Court of Appeals of Texas support[ed] [this] court's *Erie* guess that an LLC like [the defendant] is not 'an individual or corporation' under section 38.001(8)." *Hoffman v. L &M Arts*, 838 F.3d 568, 583 n. 14 (5th Cir. 2016) (citing *Choice! Power, L.P. v. Feeley*, 501 S.W.3d 199, 214 (Tex. App. 2016, no pet.)). And

---

[5]Siwell also contends that *Hoffman* is inapplicable because, unlike here, the defendants in *Hoffman* challenged the recovery of attorney's fees in pleadings and in the pretrial order and thus preserved their argument. The court disagrees for the reasons explained *supra* at § II(B).

at least one Texas court of appeals has cited *Hoffman* approvingly, *see Alta Mesa Holdings, L.P. v. Ives*, 488 S.W.3d 438, 455 (Tex. App. 2016, pet. denied), and this court is unaware of any contrary authority. Accordingly, the court concludes that § 38.001 bars recovery of attorney's fees from Leverage, an LLC.

The court concludes that Siwell has failed to meet its burden to show that it is entitled to recover attorney's fees from Leverage, and it denies Siwell's motion for attorney's fees.

III

The court now turns to Leverage's motion for judgment as a matter of law, or, alternatively, for a new trial.

A

A motion for judgment as a matter of law "'challenges the legal sufficiency of the evidence to support the verdict.'" *Jacobs v. Tapscott*, 516 F.Supp.2d 639, 643 (N.D. Tex. 2007) (Fitzwater, J.) (quoting *Hodges v. Mack Trucks, Inc.*, 474 F.3d 188, 195 (5th Cir. 2006)), *aff'd*, 277 Fed. Appx. 483 (5th Cir. 2008).

> Judgment as a matter of law is appropriate with respect to an issue if there is no legally sufficient evidentiary basis for a reasonable jury to find for a party on that issue. This occurs when the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary verdict. In considering a Rule 50 motion, the court must review all of the evidence in the record, drawing all reasonable inferences in favor of the nonmoving party; the court may not make credibility determinations or weigh the evidence, as those are jury functions. In reviewing the record as a whole, the court must disregard all evidence favorable to the moving party that the jury is not required to believe. That is, the court should give credence to the evidence

favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.

*Brennan's Inc. v. Dickie Brennan & Co.*, 376 F.3d 356, 362 (5th Cir. 2004) (brackets, citations, and internal quotation marks omitted). The court will "'uphold a jury verdict unless the facts and inferences point so strongly and so overwhelmingly in favor of one party that reasonable [jurors] could not arrive at any verdict to the contrary.'" *Goodner v. Hyundai Motor Co.*, 650 F.3d 1034, 1039 (5th Cir. 2011) (quoting *Cousin v. Trans Union Corp.*, 246 F.3d 359, 366 (5th Cir. 2001)). "In other words, the 'jury verdict must be upheld unless there is no legally sufficient evidentiary basis for a reasonable jury to find as the jury did.'" *Id.* at 1039-40 (quoting *Foradori v. Harris*, 523 F.3d 477, 495 (5th Cir. 2008)).

B

Leverage's sole ground for obtaining judgment as a matter of law is that Siwell failed to present sufficient evidence of damages at trial. According to Siwell, it suffered damages when it paid the sum of $84,100 to Fannie Mae to make it whole after Fannie Mae's loss on the subsequent sale of the Bozeman Loan. At trial, Royce Lewis ("Lewis"), Siwell's CEO, testified as to this payment:

> Q. Why [is Siwell seeking $84,100]?
> A. Well, the number that we talked about originally was Fannie Mae's repurchase amount. That's the amount that they—that they told us to credit their account to repurchase the loan. When it ended up that Fannie Mae sold the property, then the proceeds of the sale were applied to the unpaid balance, which reduced the amount to the $84,000 figure.

- 7 -

>       Q.      So as we sit here today, there was this sale; there was a credit bid; but there remained a deficiency, an amount that was still owed Fannie Mae to be made whole?
>       A.      Correct.
>       Q.      And that's the [$]84,100 you just mentioned?
>       A.      Yes.
>       Q.      And at some point, did Fannie Mae make demand on [Siwell] to pay that new, different, revised lower amount?
>       A.      Yeah, that's called a make-whole, and yes, there was a make-whole request made.
>       Q.      And did [Siwell], in fact, pay that $84,100 to Fannie Mae?
>       A.      Correct.

Tr. 182-83.

Siwell maintains that this testimony conclusively establishes damages. Leverage contends that Lewis' testimony is insufficient evidence of damages because, according to Leverage, Siwell still retains the right to pull the $84,100 out of the custodial account in which it is deposited. Leverage notes that Siwell had previously deposited $123,457.13 in a custodial account from which both Fannie Mae and Siwell could withdraw after Fannie Mae demanded repurchase of the Bozeman Loan. Lewis testified that this is normal procedure in his dealings with Fannie Mae. But Fannie Mae never removed the funds from the custodial account, and Siwell withdrew the sum years later. According to Lewis, Siwell deposited the sum of $84,100 after it received a make-whole demand from Fannie Mae.[6] Leverage maintains that Siwell retains the same prospect of future recovery here as it did for

---

[6]Lewis' testimony notes that, at some point, Fannie Mae revoked its repurchase demand and instead issued a make-whole demand. Lewis had no knowledge as to why this happened.

the repurchase demand, and that Siwell's damages are therefore speculative.

The court concludes that Siwell presented a legally sufficient evidentiary basis for a reasonable jury to find that Siwell incurred damages. Leverage notes that a September 1, 2015 report from Fannie Mae listed the payment as "pending," and it posits that the payment may still be pending. D. Br. 3 (quoting Tr. 269-70). But Lewis specifically refuted this theory in his trial testimony:

> Q. All right. My question to you is, if this [report] is supposedly evidence that you actually paid Fannie and they accepted this money, why didn't you show it to the jury yesterday in support of your damages?
> A. I don't know.
> Q. Could it be because Fannie Mae actually hasn't received that money? . . .
> Q. So this report is over one year old, and all it shows is that this [$]84,100 is pending. Why don't you have anything that proves that that money was sent and actually received?
> A. I don't know why. I know that it was.

Tr. 269-70. Lewis' testimony, which the jury was entitled to believe, proves that Siwell's damages are not speculative, but have been realized through final payment of Fannie Mae's make-whole demand. Accordingly, the court concludes that this testimony provided a sufficient evidentiary basis for a reasonable jury to have found that Fannie Mae received the

$84,100 sum that it demanded from Siwell,[7] and that Siwell therefore suffered damages.[8] Accordingly, the court denies Leverage's motion for judgment as a matter of law, or, alternatively, for a new trial.

* * *

For the foregoing reasons, the court denies Siwell's motion for attorney's fees and denies Leverage's motion for judgment as a matter of law, or, alternatively, for a new trial.

**SO ORDERED**.

April 18, 2017.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

---

[7]Because of Lewis' testimony, the court need not decide whether Siwell's placement of the $84,100 sum into the custodial account, regardless of whether Fannie Mae removed the funds, constituted damages.

[8]Outside of its general no-evidence challenge, Leverage does not contend that the jury's award of $87,025.14 in damages is otherwise unsupported or warrants a remittitur.